1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Israel Angel Martinez,                    No. CV-21-00498-PHX-DLR

10                      Plaintiff,             **ORDER**

11   v.

12   Commissioner of Social Security
     Administration,
13
                        Defendant.
14

15

16          At issue is the denial of Plaintiff Israel Angel Martinez's Applications for

17   Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") by the

18   Social Security Administration ("SSA") under the Social Security Act ("the Act").[1]

19   Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial,

20   and the Court now addresses Plaintiff's Opening Brief (Doc. 16), Defendant Social

21   Security Administration Commissioner's Response Brief (Doc. 17), and Plaintiff's Reply

22   Brief (Doc. 18).  The Court has reviewed the briefs, Administrative Record (Doc. 15, "R."),

23   and the Administrative Law Judge's ("ALJ") decision (R. at 30-42), and now affirms in

24   part, and reverses and remands in part for additional proceedings.

25   \ \ \

26   ───────────────────────

27   [1] The relevant DIB and SSI regulations in this case are virtually identical, and the Court
     cites only the DIB regulations in the Order.  Parallel SSI regulations are found in 20 C.F.R.
28   §§ 416.900-416.999 and correspond with the last two digits of the DIB citation (e.g., 20
     C.F.R. § 404.1520 corresponds with § 416.920).

## I.   BACKGROUND

Plaintiff filed applications for DIB and SSI on April 17, 2018, for a period of disability beginning on November 1, 2016.  (R. at 30.)  Plaintiff's claims were denied initially on September 11, 2018, and upon reconsideration on April 16, 2019.  (R. at 30.) Plaintiff testified before an ALJ in a hearing regarding his claims on July 28, 2020.  (R. at 30.)  The ALJ denied his claims on September 22, 2020.  (R. at 42.)  On February 3, 2021, the Appeals Council denied his request for review of the ALJ's decision.  (R. at 7-10.)  On October 8, 2021, Plaintiff filed this action seeking judicial review.  (Doc. 1.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here.  The pertinent medical evidence will be discussed in addressing the issues raised by the parties.  In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based on the severe impairments of cervical degenerative disc disease, chronic headaches, obesity, mild depression and social phobia.  (R. at 33.)

Ultimately, the ALJ evaluated the medical evidence and opinions and concluded that Plaintiff was not disabled.  (R. at 41.)  The ALJ found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (R. at 34.) Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with certain function limitations, and concluded that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform."  (R. at 36, 41.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is

more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

## III.  ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erroneously rejected Plaintiff's symptom testimony; and (2) the ALJ erred in finding Plaintiff could perform certain work because the Plaintiff's work limitations conflicted with the *Dictionary of Occupational Titles*.  (Pl. Br. at 1-2.)

### A.  The ALJ Did Not Err in Rejecting Plaintiff's Symptom and Pain Testimony.

Plaintiff argues that the ALJ committed harmful error by rejecting his symptom testimony.  (Pl. Br. at 1.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)).  Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence.  *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).  "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings regarding the Plaintiff's credibility are insufficient. *Id.*  "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for

the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

In the present case, Plaintiff argues the ALJ failed to present specific reasons from the medical record that were inconsistent with Plaintiff's symptom testimony. (Pl. Br. at 18.) Plaintiff takes issue with the ALJ's decision "that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (R. at 36-37.) Plaintiff believes that this statement failed to elucidate how the objective findings undermine any specific statements of Plaintiff's testimony. (Pl. Br. at 18.) The Court does not agree. It is apparent from the record as a whole that the ALJ used a multitude of specific reasons that are supported by the evidence to discount the Plaintiff's symptom testimony.

The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount his testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch*, 400 F.3d at 680. The ALJ's decision accounts for the Plaintiff's physical impairments encompassing cervical degenerative disc disease and chronic headaches.[2] (R. at 37.) The ALJ first considered the epidural injections Plaintiff received along with a cervical nerve block to assist with pain management. (R. at 37.) Plaintiff reported improved pain by eighty percent after this

---

[2] Although the ALJ listed additional physical impairments, Plaintiff's arguments lie only within the context of the ALJ's discussion surrounding Plaintiff's cervical disc disease and chronic headaches.

treatment.   Although the improvement may have been short-lived, Plaintiff again underwent a series of nerve blocks and radiofrequency ablations.  *Id*.  The ALJ noted that after each of these pain management procedures, Plaintiff experienced an improvement of his pain anywhere from a four on a scale of one to ten and, in subsequent treatments, a forty to fifty percent reduction in pain which ultimately led to Plaintiff's release from pain management services.  *Id*.  Although Plaintiff experienced an improvement in pain, the ALJ identified and considered any remaining allegations of pain and specified a series of restrictions applicable to Plaintiff in a job setting.  *Id*.  The ALJ ultimately reduced Plaintiff's RFC from medium to light work given these limitations.   As Defendant indicated, the ALJ's decision recognized that there were no treating providers or other medical personnel that opined that Plaintiff should have any type of workplace functional restrictions placed upon him.  (Def. Br. at 12.)  The ALJ's conclusion that the objective medical evidence does not fully support Plaintiff's allegations is reasonable.  *See Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (reiterating that the substantial evidence standard of review is highly deferential).  The ALJ also linked his discussion of Plaintiff's medical issues to the actual medical evidence in the record.  As discussed above, the ALJ tied his discussion of the medical evidence regarding Plaintiff's back and spine issues to the limitations Plaintiff claimed from those impairments.  The ALJ is not required to mechanically specify each allegation that every piece of medical evidence undermined.  Grouping the medical evidence with the allegations they undermined was sufficient.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (restating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible).

Regarding Plaintiff's argument that the ALJ discounted his headache testimony, the ALJ noted that Plaintiff was administered trigger point injections and was prescribed two types of medication for headache control.  (R. at 38.)  Plaintiff also commenced his first round of headache treatments with Botox injections.  Within two months, Plaintiff reported a thirty to forty percent improvement in migraines and felt a more general feeling of clarity

within his mind.  (R. at 38.)  After a few rounds of this treatment, Plaintiff reported only occasional migraines and mild daily headaches.  *Id.*  Plaintiff's own testimonial admission indicated that the prescribed pain medicine for migraines was working and although he still encountered some migraines, prior to his use of the headache medication, "it was way more" than what he experienced now.  (R. at 153.)  The ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms."  *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3).  "Impairments that can be controlled effectively with medication are not disabling."  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  This evidence is clear and convincing that the alleged limitations of which Plaintiff complains are disparate to the medical evidence.

Plaintiff next argues that the ALJ improperly discounted Plaintiff's mental health impairments because Plaintiff was inconsistent in attending appointments.  (Pl. Br. at 21.)  The ALJ found,

> that the claimant is not consistent in attending his mental health appointments, which leads to him running out of medication. On the other hand, during periods when the claimant is consistent with taking his medications and consistent with attending his appointments, he reports an improved mood and decreased anxiety.  Nevertheless, even when the claimant is experiencing heightened depression and/or anxiety, his mental status examinations are generally normal…

(R. at 38.) (citations omitted).

Noncompliance as described may be sufficient to deny benefits outright or support an adverse credibility determination.  *See* 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatments prescribed by your medical source(s) if this treatment is expected to restore your ability to work."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (failure to follow a prescribed course of treatment weighs against a claimant's credibility).  The record is void of any compelling reasons submitted by Plaintiff as to why he failed to follow proper medical protocol, nor does Plaintiff offer any in his argument.  The ALJ also indicated in his decision that according to medical providers,

Plaintiff used marijuana on nearly a daily basis and was advised by multiple medical providers to discontinue use of marijuana as it may contribute to exacerbating his headaches and mental health in a negative fashion.  (R. at 33, 37.)  Plaintiff employed additional arguments stating that the ALJ was incorrect to reject Plaintiff's mental health symptoms based upon positive mental health status exams because these exams took place in a structured environment. Plaintiff states that this does not demonstrate Plaintiff's abilities to complete tasks in the context of what is deemed a normal workday or week. (Pl. Br. at 21-22.)  This argument is misplaced.  An ALJ is permitted to consider this exact type of evidence as it relates to workplace functions and Plaintiff's symptoms.  *See Molina*, 674 F.3d at 1113; *Morgan v. Comm'r of SSA*, 169 F.3d 595, 600 (9th Cir. 1999).  The ALJ further illustrated that Plaintiff's treatments have been conservative and relatively routine. (R. at 40.)  This was also a proper consideration by the ALJ.  *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (indicating that if a claimant has only received conservative treatment, this is a proper reason for the ALJ to discount his symptom testimony).

Finally, Plaintiff argues that the ALJ did not list any daily activities that were either consistent or inconsistent with Plaintiff's symptoms and limitations in order to find a negative credibility determination. (Pl. Br. at 22.)  However, the record shows that the ALJ did in fact consider Plaintiff's daily activities.  The ALJ acknowledged "…[C]laimant noted that he is able to prepare simple meals, care for his dog, perform some household chores, drive, and sometimes go out alone." (R. at 35.)  At the hearing, Plaintiff testified that during a typical day, he takes medication, and he stays home all day with his dog watching TV and relaxing to handle his pain. (R. at 156.)  He can also do some chores like throw out trash, wash dishes and take care of his dog. (R. at 157.)  He testified that he has problems reading and he plays video games, but too bright of a flash can cause headaches. (R. at 155, 158.)  "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated,"

*Valentine*, 574 F.3d at 694.  Moreover, if an ALJ's decision is made "with less than ideal clarity, a reviewing court will not upset the decision on that account if [his] path may reasonably be discerned." *Alaska Dept. of Edvtl. Conservation v. E.P.A.,* 540 U.S. 461, 497 (2004); *See Brown-Hunter*, 806 F.3d at 492 (applying this standard to social security). Given the scope of the record, the ALJ properly relied upon objective medical evidence, treatment conservativeness, non-compliance, and the Plaintiff's daily activities to discount Plaintiff's testimony.   There is sufficient evidence present to enable this Court to reasonably discern his path to conclude that the ALJ's decision is supported by substantial evidence.  The Court may have interpreted some of the evidence differently, but "[w[here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Therefore, the Court finds the ALJ did not err in rejecting Plaintiff's pain and symptom testimony.   The ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's claims and those reasons were supported by substantial evidence.

**B. The ALJ Erred at Step Five by Finding Plaintiff Could Perform Work as a Bagger, Bakery Helper and Mail Clerk Due to a Conflict Between the *Dictionary of Occupational Titles* and the Testifying Vocational Expert.**

Plaintiff argues that the work limitations placed on him by the ALJ precludes him from performing the very jobs the ALJ found he would be capable of performing.  (Pl. Br. at 23.)  Specifically, the ALJ found at step five of his analysis that Plaintiff had a RFC to perform light work[3] with restrictions.  (R. at 36.)  One of those work restrictions stated that Plaintiff should refrain from "overhead reaching or working with the bilateral upper extremities."  (R. at 37.)  Plaintiff contends that this restriction counter-acts with the ALJ's finding that he could work as a bagger, bakery helper or mail clerk because those job functions would require overhead reaching and Plaintiff is unable to perform such work. The Court agrees that a legal error occurred at step five of the ALJ's analysis.  Before the

---

[3] The ALJ determined that Plaintiff was unable to perform his past previous field of work which consisted of an RFC of medium work. (R. at 40.)

Court can entertain a scholarly debate about the meaning of "reaching," the ALJ must first obtain a reasonable explanation for any conflict that exists between the testimony of the vocational expert ("VE") and the *Dictionary of Occupational Titles* (DOT).

At step five of an ALJ's decision, the ALJ must consider Plaintiff's RFC and background to determine if Plaintiff can make an adjustment to a different available job. *Gutierrez v. Colvin*, 844 F.3d 804, 806 (9th Cir. 2016). To assist the ALJ with this process, the ALJ may rely on the testimony of a VE to provide information about the types of jobs Plaintiff can still perform despite any limitations. *Id.* at 806-07. As part of the analysis, the ALJ and VE will also reference the DOT.[4] "If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Id.* at 807 (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000))[5]. "Thus, the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational* Titles." *Massachi*, 486 F.3d at 1153. The Court finds that a potential conflict exists, and the ALJ erred by neglecting to further question the VE about the conflict between the ALJ's assessment, the VE's testimony and the DOT.

Hearing testimony in this case shows that the ALJ did in fact advise the vocational expert at the start of his testimony that if the VE's opinion conflicted with the DOT, the ALJ would need to be advised of the conflict and the VE would need to provide a basis for his opinion. (R at 160.) The ALJ then submitted hypothetical number one to the VE which

---

[4] The *Dictionary of Occupational Titles* is a guidance resource composed by the Department of Labor that consists of various occupation descriptions and includes the requirements for those positions. *Gutierrez*, 844 F.3d at 807.

[5] "SSR 00–4p simply goes one step further, explicitly requiring that the ALJ determine whether the expert's testimony deviates from the Dictionary of Occupational Titles and whether there is a reasonable explanation for any deviation." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).

involved a light work exertional level example and included all the restrictions that encompassed Plaintiff's abilities and limitations.  The VE testified that in that hypothetical, jobs would include laundry bagger, bakery helper and mail clerk.  (R. at 161.)   For hypothetical number two, the ALJ posed the same background information, but asked "…if someone was off-task twenty percent of each day would that allow for any work in the national economy?" to which the VE replied "No."  (R. at 161.)  As hypothetical number three, the ALJ asked, "…if somebody were to miss two to four days per month from their job, would that allow for any work in the national economy?"  The VE again replied "No."  (R. at 161-162.)   The ALJ finished with the question, "…has your testimony been consistent with the *Dictionary of Occupational Titles*?" (R. at 162.)  The VE replied, "Yes, it has been consistent.  However (inaudible) reaching overhead or being off-task or missing work."  (R. at 162.)  The ALJ did not ask any follow-up questions concerning this disparity and in fact, concluded the hearing at this point.  Additionally, the ALJ failed to raise the presence of a conflict between the VE and the DOT in his written decision.  The ALJ writes, "Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."  (R. at 41.)

It is obvious and apparent to the Court that a potential conflict may exist between the jobs the VE recommended, and the work-place restrictions placed upon the Plaintiff's movements by the ALJ, which center around Plaintiff's abstention from "overhead reaching or working with the bilateral upper extremities."  (R. at 37.)  Although the ALJ asked the VE if the testimony given conflicted with the DOT, the ALJ failed to acknowledge the presence of a conflict in the VE's response and ask additional questions of the VE to explain the inconsistency.  When an ALJ does not ask "whether there was a reasonable explanation for the conflict…we cannot determine whether substantial evidence supports the ALJ's step-five finding that [Plaintiff] could perform other work."  *Massachi*, 486 F.3d at 1153-54.  The VE's testimony is ambiguous and appears to be incomplete.  Therefore, the Court remands the present case for the ALJ to make the proper findings

under SSR 00-4p.  The ALJ needs to determine if there is a reasonable explanation for the disparity between the VE's testimony and the DOT; and whether the jobs identified by the VE are consistent with Plaintiff's limitations and the DOT.

### C. The Credit-as-True Rule Does Not Apply

Plaintiff asks the Court to use its discretion and remand this case for an award of disability benefits for Plaintiff rather than remanding for further proceedings.  (Pl. Br. at 23.)  The credit-as-true rule only applies in "rare circumstances" that permit the Court to depart from the ordinary remand rule.  *Treichler*, 775 F.3d at 1099-1102.  Three elements must be present for these rare circumstances to exist.  First, the ALJ must have neglected to supply legally sufficient reasons for rejecting medical evidence.  *Id*. at 1100.  Second, a fully developed record must exist with no outstanding issues pending resolution before a disability determination can be made, and the Court must find that further administrative proceedings would not be constructive.  *Id*. at 1101.  Further proceedings are effective when there are ambiguities and conflicts that must be resolved.  *Id*.  Third, if the first two elements are met, the Court may "find[] the relevant testimony credible as a matter of law…and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'"  *Id*.  (citations omitted).

The Court finds the ordinary remand rule applies, not the credit-as-true rule.  The ALJ failed to fully develop the record in this case.  Proper findings are amiss under SSR 00-4p leaving the record susceptible to outstanding issues and conflicting evidence that must be resolved in order for the ALJ to make a proper disability determination. Accordingly, the Court remands this case to the ALJ for further development of the record and a disability determination.

**IT IS THEREFORE ORDERED** this matter shall be remanded to the Social Security Administration for further proceedings consistent with this Order.  Specifically, the ALJ must further develop the conflict between the VE's testimony and the DOT in accordance with SSR 00-4p.

1    **IT IS FURTHER ORDERED** the Clerk of the Court shall enter judgment

2    accordingly and close this case.

3    Dated this 6th day of September, 2022.

4

5

6

7    _____

8    Douglas L. Rayes
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28